UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-01162-GCS |
| | ) |
| SHERI BUETTNER, CHELSEA REGELSPERGER, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 46). Defendants filed the Motion along with a Memorandum of Law in Support on January 18, 2024. (Doc. 46, 47). The Court provided Plaintiff with two extensions of time. (Doc. 50, 52). The second extension provided Plaintiff until April 18, 2024, to respond to the Motion. (Doc. 52). Plaintiff then filed a timely Response to the Motion for Summary Judgment on April 11, 2024. (Doc. 53). For the reasons delineated below, Defendant's Motion for Summary Judgment is **DENIED**. (Doc. 46).

## PROCEDURAL BACKGROUND

Plaintiff Robert Morris ("Morris"), an inmate of the Illinois Department of Corrections ("IDOC"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center ("Menard"). (Doc. 13). Plaintiff's First Amended Complaint contains six general groups

of claims, including: a mental health incident that occurred on October 12, 2021 (Doc. 13, p. 14-15); a disciplinary proceeding that occurred on October 19, 2021 (Doc. 13, p. 15-16); an alleged excessive force incident by the use of chemical agents on January 12, 2022 (Doc. 13, p. 16-17); a mental health crisis/hunger/water strike beginning on March 28, 2022; and a medical incident coupled with alleged excessive force on April 4, 2022 (Doc. 13, p. 18-19).

On September 5, 2023, the Court conducted is preliminary review of Plaintiff's First Amended Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 17). The Court construed Plaintiff's Amended Complaint into the following counts:

> **Claim 1:** Eighth Amendment deliberate indifference claim against Defendants Rowland and BHT Ms. R for refusing/ignoring Plaintiff's expression of suicidal and homicidal ideation one hour prior to a mass suicide attempt on October 12, 2021;
>
> **Claim 2:** Eighth Amendment excessive force claim against Defendants C/O Agne and Sgt. Royster for excessively deploying mace and a fire extinguisher into Plaintiff's cell on October 12, 2021, in response to the mass suicide attempt;
>
> **Claim 3:** Eighth Amendment deliberate indifference or cruel and unusual punishment claim against Defendant MHP Ms. Buettner for refusing to decontaminate Plaintiff on October 12, 2021, and for placing him in a filthy cell;
>
> **Claim 4:** Eighth Amendment excessive force or cruel and unusual punishment claim against Defendants Rowland, Lt. Zang, Lt. Bradley Sadler, Sgt. Royster, C/O Hoffman, C/O Evans and C/O Dulaney for directing or participating in the January 12, 2022, incident of excessive use of chemical agents during a "peaceful protest," which included spraying Plaintiff for over 3-5 minutes with mace and fire extinguishers, and then failing to offer decontamination;
>
> **Claim 5:** Eighth Amendment deliberate indifference claim against Defendant Dr. Meyers for refusing medical treatment or ignoring Plaintiff's

claims of chest pain and intermittent consciousness during a hunger/water strike on March 31, 2022;

**Claim 6:** Eighth Amendment excessive force or cruel and unusual punishment claim against Defendants Royster, C/O Evans, Lt. Zang, Lt. Bradley Sadler, C/O Agne, Sgt. Story, Sgt. Gaetz, Sgt. Laminack and Sgt. Morris for releasing pepper spray on April 4, 2022, on individuals who were on a hunger strike, which caused Plaintiff a panic attack, chest pain, and intermittent consciousness;

**Claim 7:** Eighth Amendment deliberate indifference or cruel and unusual punishment claim against Defendant Crane who was "unprofessional" towards Plaintiff when he was brought to the healthcare unit on April 4, 2022, after the pepper spray incident and who sent him away after he was washed and received an EKG; and

**Claim 8:** Eighth Amendment excessive force or cruel and unusual punishment claim against Defendants Lt. Bradley Sadler, Sgt. Story, Sgt. Gaetz, Sgt. Laminack, Sgt. Morris, and C/O Agne for allegedly beating Plaintiff on April 4, 2022, after removing him from the healthcare unit, and for then placing him in a cell contaminated with chemical agents without any ability to decontaminate for "days."

(Doc. 17, p. 6-7). Claim 1 survived against Defendants Rowland and Reglesler.[1] *Id.* at p. 15. Claim 2 survived against Defendants Ange and Royster. *Id.* Claim 3 survived against Defendant Buettner. *Id.* The Court allowed Plaintiff to bring the remaining claims in separate lawsuits.[2] *Id.*

---

[1] Per her answer, the correct spelling of this Defendant's name is "Regelsperger" and will be used hereinafter. (Doc. 35).

[2] Plaintiff was allowed 21 days to inform the Court if he would like to proceed on the following claims in separate cases:

**Case B:** Claim 4 concerning the January 12, 2022, incidents (Rowland, Zang, Sadler, Royster, Hoffman, Evans, Dulaney);
**Case C:** Claim 5 concerning Dr. Meyers's March 31, 2022, refusal of care; and
**Case D:** Claims 6-9 concerning the April 4, 2022, incidents (Royster, Evans, Zang, Sadler, Agne, Story, Gaetz, Laminack, Morris, Crane)

## FACTUAL BACKGROUND

Plaintiff's grievance records, obtained from the Administrative Review Board ("ARB") contain a total of 309 pages. (Doc. 47, p. 4). Plaintiff's grievance records from Menard, obtained from the Attorney General's Office, contains a total of 236 pages.[3] *Id.* Plaintiff submitted a total of four grievances at Menard before the alleged October 12, 2021, incident.[4] (Doc. 47, Exh. 2, p. 1). The Court will review those grievances related to

---

(Doc. 17, p. 15).

[3]  Defendants did not submit the Menard Grievances because none of them relate to the October 12, 2021, incident. (Doc. 47, p. 4). Plaintiff submitted a total of four grievances at Menard before the alleged incident on October 12, 2021. *Id.*

[4]  Plaintiff's grievance record from Menard shows that Plaintiff submitted a total of six grievances at Menard during 2021. (Doc. 47, Exh. 2, p. 1). These grievances include:

> **Grievance No. 162-8-21:** Plaintiff submitted this grievance on August 19, 2021. *Id.* Grievance No. 162-8-21 concerned "N2 restrictions and privileges denied due to COVID & pink tag status." *Id.* at p. 2. The Grievance Log indicates the grievance was reviewed by the CAO on September 2, 2021, deemed moot, and returned to Plaintiff on September 7, 2021. *Id.* at p. 3.
>
> **Grievance No. 257-8-21:** Plaintiff submitted this grievance on August 30, 2021. *Id.* at p. 1. Grievance No. 257-8-21 concerned "N2 ADA hearing accommodations, property." *Id.* at p. 2. The Grievance Log indicates the grievance was reviewed by the CAO on September 8, 2021, deemed moot, and returned to Plaintiff on September 9, 2021. *Id.* at p. 3.
>
> **Grievance No. 74-9-21:** Plaintiff submitted this grievance on September 9, 2021. *Id.* at p. 1. Grievance No. 74-9-21 concerned "N2 property confiscated by IA, special commissary shop & documents from IA." *Id.* at p. 2. The Grievance Log indicates the grievance was reviewed by the CAO on September 14, 2021, denied, and returned to Plaintiff on September 15, 2021. *Id.* at p. 3.
>
> **Grievance No. 75-9-21:** Plaintiff submitted this grievance on September 9, 2021. *Id.* at p. 1. Grievance No. 75-9-21 concerned "N2 confiscated property." *Id.* at p. 2. The Grievance Log indicates the grievance was reviewed by the CAO on September 14, 2021, denied, and returned to Plaintiff on September 15, 2021. *Id.* at p. 3.

the October 12, 2021, incident below.

Plaintiff submitted one grievance dated December 13, 2021, alleging that he was sending it directly to the ARB because he had "been denied the grievance box" and when he had been presented it Plaintiff wrote that "there wasn't any responses and/or counselor receipts to send in confirmation that someone ha[d] taken notice of it."[5] (Doc. 47, Exh. 1, p. 36). Plaintiff went on to detail the October 12, 2021, incident implicating both Defendant Regelsperger and Defendant Buettner. *Id.* at p. 36-37. Plaintiff complained that "Ms. R. never wrote [us] down for our crisis calls and hunger strike declaration" after he and a group of inmates vowed to commit suicide because their complaints about "commissary/ the business office/administration, dietary, law library and many more" had not received any answer. *Id.* at p. 37. Plaintiff implicated Defendant Buettner by stating that she "lied about his appearance upon his arrival into [health care]" after he

---

**Grievance No. 359-10-21:** Plaintiff submitted this grievance on October 29, 2021. *Id.* at p. 1. Grievance No. 359-10-21 concerned "N2 property misplaced in transit." *Id.* at p. 2. The Grievance Log indicates the grievance was returned to Plaintiff by a Counselor at the first level on November 16, 2021. *Id.* The Grievance log does not show that the Grievance was forwarded on to the second level for review by the CAO. *Id.* at p. 3.

**Grievance No. 242-12-21:** Plaintiff submitted this grievance on December 22, 2021. *Id.* at p. 1. Grievance No. 242-12-21 concerned "N2 ADA watch." The Grievance Log indicates the grievance was reviewed by the CAO on September 14, 2021, deemed moot, and returned to Plaintiff on January 20, 2022. *Id.* at p. 3.

5      Along with Plaintiff's written grievance, Plaintiff submitted affidavits from nine inmates indicating that Plaintiff was being denied access to the grievance process. (Doc. 47, Exh. 1, p. 15-33). Inmate Sherman Gibson wrote that he observed that on the week of November 8 – November 14, 2021, that the grievance box officer refused to stop by and pick up Plaintiff's complaints. *Id.* at p. 33. Inmate Michael Wilson noted that he had "seen multiple staff destroy and throw away many individuals in custody complaints/grievances from the Grievance Procedure: Grievance Box." *Id.* at p. 25.

was dragged out of his cell and placed on suicide watch. *Id.* Plaintiff claims Buettner told him that she would say what she needed to say to protect staff at Menard. *Id.* The grievance was not reviewed because the facility responses were not provided as required. *Id.* at p. 12.

Plaintiff submitted another grievance directly to the ARB dated December 22, 2021, about the October 12, 2021, incident. (Doc. 47, Exh. 1, p. 8-11). Plaintiff wrote that he had attempted suicide by arson on October 12, 2021, and that he was "wrongfully" given three months in segregation. *Id.* at p. 11. He indicated that nurses had denied him from seeing a doctor after the incident. *Id.* The grievance was not reviewed by the ARB because Plaintiff did not provide his original written grievance along with the responses from the counselor, Grievance Officer, and Chief Administrative Officer. *Id.* at p. 8.

Plaintiff submitted a grievance dated March 27, 2022, directly to the ARB, about the October 12, 2021, incident as well. (Doc. 47, Exh. 1, p. 5-7). Plaintiff grieved that he had attempted to "kill himself in a fire" on October 12, 2021. *Id.* at p. 7. In the "relief requested" section of Plaintiff's grievance he wrote that he would "like the ARB to properly answer this because the Grievance Box and its procedure was not made available to [him]." *Id.* at p. 6. This grievance was not reviewed by the ARB because the facility responses were not included with Plaintiff's submission. *Id.* at p. 5.

Lastly, Plaintiff submitted a grievance dated April 17, 2022, regarding several issues including the October 12, 2021, incident to the ARB. (Doc. 47, Exh. 1, p. 1-4). Plaintiff grieved that in October 2021 he had a "crisis situation along with others . . . where [he] was actually punished for trying to commit self-harm." *Id.* at p. 3. Plaintiff also

reported to the ARB that he had "tried his best to submit [his] issues to the grievance box and to the counselor." *Id.* at p. 2.  However, Plaintiff indicated that the counselor would "retrieve [his] grievances without any response." *Id.* This grievance was not reviewed by the ARB because no facility responses were included, and he was not within the 60-day time frame to grieve. *Id.* at p. 1.

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine whether a genuine issue of material fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity

to exhaust should time still permit or if the failure to exhaust was innocent.[6] *Id*. at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, it affords prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance

---

[6] *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint."[7] 20 ILL. ADMIN. CODE § 504.810(a). Should the prisoner not be satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id.* at (a)-(b). The Grievance

---

7   This does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(a).

Officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the Grievance Officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id.* If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* If the CAO classifies the grievance as an emergency grievance, the CAO shall "expedite the process of the grievance and respond to the offender indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is non-emergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such a case, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance

with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution." *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850." *Id.*

## DISCUSSION

Whether Plaintiff Morris exhausted his administrative remedies comes down to one question: did Plaintiff have access to the administrative remedy process from October 2021 through mid-December 2021?[8] Defendants assert that Plaintiff did have access to the administrative grievance process. (Doc. 47, p. 12). In support of their assertion, they point the Court to a single grievance – Grievance No. 359-10-21 – that Plaintiff filed on October 29, 2021, which was returned to Plaintiff by a counselor on November 16, 2021. *Id.* Defendants also argue that Plaintiff conceded in his response to Defendants' Motion for

---

[8] The Court believes that Plaintiff's grievance dated December 13, 2021, is the only grievance concerning the October 12, 2021, event that sufficiently details the involvement of Defendants Regelsperger and Buettner. Therein, Plaintiff specifically describes the same conduct alleged in counts one and three of his complaint against these defendants. *See* (Doc. 47, Exh. 1., p. 37).

Summary Judgment that he did not first attempt to submit the December 13, 2021, grievance at the first level prior submitting it to the ARB. (Doc. 56, p. 2). Plaintiff however contends that he lacked access to the administrative remedy process and that was why he mailed the December 13, 2021, grievance directly to the ARB. (Doc. 53, p. 2-3). In viewing the evidence in the light most favorable to Plaintiff, the Court is not convinced that Defendants have met their burden of proof in demonstrating that Plaintiff failed to exhaust his administrative remedies in this case.

An administrative remedy is available if it is 'capable of use' to obtain 'some relief for the action complained of.'" *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Unavailability does not necessarily have to be caused by the misconduct of the defendants; a process can be unavailable where-as here-an "inmate through no fault of his own, could not [access] the grievance process." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). The availability of an administrative remedy is a fact specific inquiry. *Id.* at 688. The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

In this case, more than just mere speculation is present in the record to corroborate Plaintiff's assertion that he was thwarted from accessing the grievance process at Menard after the October 12, 2021, mental health incident. *C.f. Hoskins v. Swisher*, Case No. 20-CV-522-SMY, 2022 WL 226063, at *5 (S.D. Ill. Jan. 26, 2022) (finding that Plaintiff's mere speculations about the grievance processes' unavailability was not enough of a record on its own to demonstrate unavailability of the administrative remedy process). The Court

acknowledges that Plaintiff did submit one grievance successfully on October 29, 2021, which dealt with property misplaced in transit. The Court, however, also notes that prior to the incident date of October 12, 2021, Plaintiff filed four grievances which all contained responses. These grievances dealt with issues ranging from restrictions and privileges to accommodations and property. It is difficult to imagine that the Plaintiff would not have grieved about the October 12, 2021, incident, especially given its alleged severity, when he had grieved about relatively minor issues as previously mentioned. This fact gives added credence to Plaintiff's claims that he had been denied access to the grievance box; hence his need to file the grievances directly with the ARB. This, in turn, is corroborated by the affidavits of several fellow inmates indicating that they witnessed Plaintiff being denied access to the grievance box during the relevant period. This is sufficient to give the Court pause. Accordingly, Defendants' Motion for Summary Judgment is **DENIED**.

## CONCLUSION

For the reasons outlined about the Court **DENIES** Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 46).

**IT IS SO ORDERED.**

**DATED:  September 24, 2024.**

Digitally signed by Judge Sison
Date: 2024.09.24 13:34:06 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**