**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBERT MORRIS, #R71372,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 3:23-cv-01162-GCS** |
| | ) | |
| **SHERI BUETTNER, CHELSEA REGELSPERGER, TREVOR ROWLAND, MAYNARD AGNE, PHILIP ROYSTER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

## INTRODUCTION AND BACKGROUND

Plaintiff Robert Morris, an inmate of the Illinois Department for Corrections, brings this suit under 42 U.S.C. § 1983 for violations of his rights at Menard Correctional Facility ("Menard"). (Doc. 1, 17). Morris alleges that Defendants Chelsea Regelsperger, Sheri Buettner, and Trevor Rowland (collectively, "Defendants"), as well as Defendants Maynard Agne and Philip Royster, violated his rights in relation to an October 12, 2021, mass suicide attempt and its aftermath. Defendants filed two Motions for Summary Judgment and supporting memorandums. (Doc. 70, 86). For the reasons that follow, the Court **GRANTS** Rowland's Motion for Summary Judgment and **GRANTS IN PART and DENIES IN PART** Regelsperger's and Buettner's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

Morris filed this lawsuit on April 6, 2023. (Doc. 1). He filed his First Amended Complaint on June 12, 2023. (Doc. 13). The Court screened the First Amended Complaint pursuant to 28 U.S.C. § 1915A and severed it into several cases. (Doc. 17, p. 11). This case was permitted to proceed on the following claims:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Rowland and [Defendant Regelsperger] for refusing/ignoring Plaintiff's expression of suicidal and homicidal ideation one hour prior to a mass suicide attempt on October 12, 2021;**
>
> **Claim 2:** **Eighth Amendment excessive force claim against Defendants C/O Agne and Sgt. Royster for excessively deploying mace and a fire extinguisher into Plaintiff's cell on October 12, 2021, in response to the mass suicide attempt;**[1]
>
> **Claim 3:** **Eighth Amendment deliberate indifference or cruel and unusual punishment claim against [Defendant Buettner] for refusing to decontaminate Plaintiff on October 12, 2021, and for placing him in a filthy cell.**

(Doc. 17, p. 6).

Buettner and Regelsperger filed a Motion for Summary Judgment on Claims 1 and 3, along with a supporting memorandum, on October 3, 2023. (Doc. 70, 71). Rowland filed a Motion for Summary Judgment on Claim 1, along with a supporting memorandum, on February 4, 2026. (Doc. 86, 87). Morris filed a Response to both Motions on June 26, 2026. (Doc. 93). The Motions are thus ripe for decision.

---

[1] Defendants Agne and Royster did not file a Motion for Summary Judgment. Claim 2 will proceed to trial.

## FACTUAL BACKGROUND

The following facts are taken from the record (including Plaintiff's supplemental information), presented in the light most favorable to Plaintiff, and all reasonable inferences are drawn in his favor. See *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

On October 12, 2021, Morris and several other inmates at Menard were yelling and screaming to get the attention of prison staff. (Doc. 87-1, p. 25). Inmates in two other cells other than Morris's cell were yelling and screaming, but it was unclear which specific cells they were in. *Id*. at p. 63-64. The inmates had several issues they wanted prison staff to address. *Id*. at p. 24-25. Other inmates told Morris that prison staff was ignoring the screaming inmates. *Id*. at p. 61. Morris responded, "tell them that if I don't get help, I'm going to kill myself. . . ." *Id*. Morris did not see any members of prison staff, but he believed — and was told by other inmates—that Regelsperger and Rowland were two floors above him doing mental health rounds. *Id*. at p. 25-26, 59. Morris believes he heard Rowland speaking to others, but there were too many people yelling and screaming for him to be certain. *Id*. at p. 66. Morris did not see Regelsperger during the incident, she did not speak to him, and she was not outside of his cell door. *Id*. at p. 28, 118-119. Sometime later, Morris lit his mattress on fire in an attempt to commit suicide. *Id*. at p. 67. *See also* (Doc. 71-3, p. 32). Rowland had already left the area. *Id*. Morris was sprayed with pepper spray and a fire extinguisher after he lit his mattress on fire. (Doc. 87-1, p. 108-09.)

Morris saw a nurse for mace exposure at 11:00 AM on October 12, 2021. (Doc. 87-

4, p. 33). The nurse's notes from the appointment show that Morris was conscious and that the nurse removed chemical irritants from Morris's face, removed contaminated clothing, and washed Morris's skin and eyes. *Id*. Morris maintains that the nurse walked past him without helping him while he was waiting to see Buettner even though he was "drenched" with mace. (Doc. 71-3, p. 43).

Morris saw Buettner at approximately 12:15 PM on October 12, 2021. (Doc. 71-9, p. 146-47). Buettner's notes from the session indicate Morris was appropriately groomed considering his situation. *Id*. at p. 146. Morris declared a hunger strike during his time with Buettner. (Doc. 71-4, p. 34). The hunger strike lasted until early on the morning of October 13, 2021, when a nurse recorded that Morris had eaten food that had been given to him at 11:00 PM the night before. *Id.* at p. 39.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th

Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted); *Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *Burton v. Kohn L. Firm, S.C.,* 934 F.3d 572, 579 (7th Cir. 2019) (citation omitted).

## DISCUSSION

To establish a violation of the Eighth Amendment, a prisoner must satisfy two requirements—first, he must demonstrate that the deprivation was "objectively, sufficiently serious," and second, he must demonstrate that the prison official had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). Deliberate indifference requires proof that the prison official subjectively knew of the substantial risk of harm to a prisoner and consciously disregarded it. *Id.* at 837. Deliberate indifference requires that a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* (emphasis added). A defendant's failure to alleviate a risk that they should have been aware of, "while no cause for commendation," does not amount to deliberate indifference. *Id.* at 838. In the context of a failure to protect an inmate from harm, a defendant acts with deliberate indifference where they effectively condone the harm by allowing it to happen. *See Santiago v. Walls*, 599 F.3d 749, 756.

### A. Regelsperger and Rowland did not act with deliberate indifference to Morris.

Defendants Regelsperger and Rowland are entitled to summary judgment on Claim 1 because Morris has not shown that Regelsperger or Rowland acted with deliberate indifference towards him.

#### *i. Regelsperger's and Rowlands' presence on October 12, 2021*

First, the Court finds that a reasonable jury could conclude that Regelsperger, but not Rowland, was present during the mass suicide attempt on October 12, 2021. Morris did not see either Regelsperger or Rowland on that date. *See, e.g.*, (Doc. 87-1, p. 25) (stating

that "I can't say that I [saw] some of the staff, like the staff that I alleged in this case"); *see id.* at p. 59, 63-64 (Rowland), 118-119 (Regelsperger). Rather, the people Morris believes to have been Regelsperger and Rowland were doing rounds two floors above him. *Id*. at p. 26, 28. Morris did not speak directly to either Regelsperger or Rowland. *Id*. at p. 26. Morris stated in his deposition that one of the voices he heard "sounded like" Rowland but could not say that it was him, and he heard people speaking back to the inmates who were screaming and yelling. (Doc. 87-1, p. 59). The Court is not convinced that the brief exchanges that Morris heard during the commotion of the mass suicide attempt, and while he himself was screaming and yelling, is sufficient to permit an inference that either Regelsperger or Rowland was present during the mass suicide attempt.

Similarly, Morris said in his deposition that several other inmates, who could see which employees were present, told him that Regelsperger and Rowland were present during the mass suicide attempt. (Doc. 87-1, p. 61-62, 64, 65). Regelsperger and Rowland correctly point out these statements by other inmates are hearsay, which cannot defeat a properly supported motion for summary judgment.[2] *See Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003), overruled on other grounds by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997). Thus, Morris cannot rely on these statements to show that Regelsperger or Rowland were present during the mass suicide attempt.

---

[2] While the other inmates' statements themselves might fall into the hearsay exceptions for present sense impressions and/or excited utterances, FED. R. EVID. 803(1), (2), Morris's account of the statements is unquestionably hearsay.

Finally, Morris relies on several affidavits from other inmates that he says show that Regelsperger was not only present but ignored Morris's cries for help on October 12, 2021. (Doc. 13, p. 32-36; Doc. 93, p. 3-4). The Court notes that none of these affidavits mention Rowland. *(*Doc. 13, p. 32, 33, 35; Doc. 87-1, p. 77). Thus, they do not establish that Rowland was present. However, they do assert that Regelsperger was present. *Id.* As such, these affidavits permit the inference that Regelsperger was present on October 12, 2021. Because no reasonable jury could conclude that Rowland was present on October 12, 2021, he is entitled to summary judgment as to Claim 1.

*ii. Regelsperger's knowledge of Morris's threat to commit suicide*

Even assuming that Regelsperger was present on October 12, 2021, Morris has not pointed to any evidence that suggests she heard Morris threaten to commit suicide.[3] As noted above, Morris never spoke directly to Regelsperger, and she was two floors above him when he threatened to commit suicide. (Doc. 87-1, p. 26, 28). Moreover, there were at least five inmates screaming at Regelsperger to try and get her attention.[4] There was so much noise that Morris could not tell if anyone responded to him. *See, e.g.*, *Id*. at p. 66 (stating that "[b]ut it's billion guys yelling and screaming . . . There were so many guys yelling and screaming, don't know if [anyone] was saying it to me. Honestly, I'm assuming, like, man, [they're] ignoring me."). Other inmates were also closer to

---

[3] The same would be true of Rowland, if he were present.

[4] This includes Morris and the four inmates who submitted affidavits indicating that they participated in the mass suicide attempt. (Doc. 13, p. 32-36).

Regelsperger than Morris was, and as Morris concedes, those inmates may have caught her attention. *Id.* at p. 26-27. Furthermore, the affidavits from other inmates say only that Regelsperger was present and that she ignored Morris when he called her name. Even if true, it does not establish that Regelsperger heard Morris threaten to commit suicide. Because there is no evidence that Regelsperger heard Morris threaten to commit suicide, she cannot have acted with deliberate indifference to that threat. Accordingly, she is entitled to summary judgment as to Claim 1.

**B. Buettner is entitled to partial summary judgment on Claim 3.**

Defendant Buettner is entitled to summary judgment as to Morris's claim that she acted with deliberate difference to a serious medical need by placing him in a filthy cell. However, she is not entitled to summary judgment as to her alleged failure to decontaminate Morris after he was sprayed with mace.

*i. Placing Morris in a filthy cell*

Buettner is entitled to summary judgment as to placing Morris in a filthy cell because there is no evidence that placing Morris in a cell implicated the Eighth Amendment or that Buettner was involved in placing Morris in the cell.

To succeed on an Eighth Amendment claim, a plaintiff must show that he was exposed to an "objectively, sufficiently serious" risk. *Hall v. Wykes*, No. 24-3158, 2026 WL 511136, at *2 (7th Cir. Feb. 24, 2026) (quoting *Farmer*, 511 U.S. at 834). Conditions of confinement are sufficiently serious when they "deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (cleaned up). The Court must evaluate

conditions of confinement in totality. *Id*. at p. 522. If the conditions, considered together, produce a deprivation of a "single, identifiable human need," then they violate the Eighth Amendment. *Id*. Morris cannot clear this bar.

The Court notes that Morris has not supported his allegation that the cell into which he was placed was infested with vermin. (Doc. 13, p. 15). At his deposition, Morris described the cell as filthy, but the only specific problem that he could recall was that there was sawdust in it. (Doc. 87-1, p. 50). Morris did not mention vermin. Similarly, the affidavit Morris submitted with his Response describes the cell as "contaminated" and "filthy," but he did not describe vermin or any specific problems with the cell. (Doc. 93, p. 7). There is thus no evidence that permits the inference that the cell was infested with vermin.

The other allegations, taken together, do not amount to an objectively, sufficiently serious risk. The presence of sawdust in the cell may not have been ideal, but it did not deny Morris the minimal civilized measure of life's necessities or deprive him of a single, identifiable need, particularly because Morris has not explained what harm the sawdust caused him. *See, e.g.*, *Isby*, 856. F.3d at 523 (affirming summary judgment where there was no evidence of harm caused by conditions of confinement). Because Morris was not exposed to a substantial risk of serious harm, Buettner could not have acted with deliberate indifference by placing Morris into the cell.

Morris has also failed to point to evidence that Buettner had a role in placing him in the cell. Buettner was a mental health worker. (Doc. 78-1, p. 1). Mental health workers do not make cell assignments. *Id.* Buettner did not take Morris to the cell. (Doc. 87-1, p.

50). The only basis Morris had to believe that Buettner was involved in his cell placement was that unnamed security guards told him that "mental health" put him in the cell. *Id*. at p. 49. But, as explained above, Morris's recollection of things that other people told him are inadmissible hearsay that cannot defeat summary judgment. Because there is no evidence that Buettner was responsible for Morris's cell placement, she cannot have acted with deliberate indifference. She is entitled to summary judgment on Claim 3 as to placing Morris into a filthy cell.

*ii. Failure to decontaminate*

Buettner, however, is not entitled to summary judgment as to her alleged failure to decontaminate Morris after he was maced because there is a genuine dispute of material fact as to whether Buettner refused to help decontaminate Morris.

Morris's medical records show that a nurse saw him at or around 11:00 AM on October 12, 2021. The nurse marked that she decontaminated Morris, including by washing his face with wet cloths, removing contaminated clothing, and washing his skin for ten minutes. (Doc. 71-4, p. 33). Morris saw Buettner about an hour later. (Doc. 87-1, p. 39; Doc. 71-4, p. 34). Buettner's notes from the visit indicate that he was "groomed appropriately for his situation" and do not say anything about Morris being covered in mace or complaining about mace. (Doc. 71-9, p. 146). Buettner's notes from when Morris declared a hunger strike say that his skin condition was good and his eyes and mouth were sufficiently moist. (Doc. 71-4, p. 34). Another medical record, from 7:00 PM on October 12, 2021, recorded that Morris showed no signs of distress and reported no signs of distress. (Doc. 71-4, p. 36).

In his deposition, Morris gave a different story than what his medical records reflect. He said that no nurse decontaminated him at 11:00 AM. (Doc. 97-1, p. 43). Rather, the nurse walked past him while he was waiting to see Buettner. *Id*. She later walked by a second time, asked Morris if he was okay, and when he said that he was "fully drenched" in mace, she ignored him and left. *Id*. When counsel showed Morris the medical record from the nurse visit, Morris said that the nurse "made it up." *Id.* Morris also disputed Buettner's session notes, asserting that he was not properly groomed, that he was still covered in mace, and that he asked Buettner to help clean him off. *Id*. at p. 47-48. Morris also claimed that Buettner made up other portions of her session notes. *Id*. at p. 40. Finally, when Morris was shown the 7:00 PM record that indicated he was not showing signs of distress, he agreed, noting that "by that time, so much stuff had died down." *Id*. at p. 45.

Buettner relies on the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372, 380-381 (2007), to argue that Morris's account is so lacking in credibility that no reasonable jury could believe it. (Doc. 71, p. 13). However, the Seventh Circuit has rejected *Scott* as "simply not apposite" to the same type of prison medical records at issue in this case. *Eagan v. Dempsey*, 987 F.3d 667, 691 (7th Cir. 2021). There, the court found a "significant qualitative difference between a videotape and crisis-watch logs that were in the hands of officers," in part because the veracity of the logs could be challenged. *Id*. at p. 691-692. The same reasoning applies here. The Court cannot discard Morris's account of events out of hand.

A reasonable jury could find that Morris's medical records failed to note that he

had not yet been decontaminated and that Buettner did not help him. Morris's account is at odds with the rest of the record, and it is notable that he does not explain how he was eventually decontaminated (or if he was not decontaminated at all). Nor does he explain why his medical records might have been falsified. However, it is not so implausible that the Court can take it out of the province of a jury. Accordingly, there is a genuine dispute of material fact as to whether Morris had been decontaminated before he saw Buettner, and thus as to whether Buettner failed to decontaminate Morris in violation of the Eighth Amendment.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions for Summary Judgment as to Claim 1 and **DIRECTS** the Clerk to dismiss Chelsea Regelsperger and Trevor Rowland. The Court **GRANTS** summary judgment to Sheri Buettner on Claim 3 with respect to placing Morris in a filthy cell but **DENIES** summary judgment as to the failure to decontaminate Morris. That part of Claim 3 shall continue against Buettner. Claim 2 shall continue against Maynard Agne and Philip Royster.

**IT IS SO ORDERED.**

**DATED: September 29, 2026.**

Gilbert C. Sison
Digitally signed by Judge Sison
Date: 2026.09.29 10:45:12 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**